IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KYLE RAYOME, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 2639 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ABT ELECTRONICS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff has filed a Motion to Compel the defendant to comply with Judge Blakey's Order of November 15, 2023, by a date certain and to produce a privilege log. For the following reasons, the plaintiff's motion [Dkt. #113] is granted in part and denied in part.

The plaintiff filed this case three years ago on May 14, 2021. It got off to a slow start, as it was stayed two months later because plaintiff had not exhausted his administrative remedies. [Dkt. #12]. It took about a year for the bureaucratic wheels to finish spinning, and the stay was finally lifted August 23, 2022, with fact discovery set to close February 28, 2023 [Dkt. #34]. Discovery did not end at that initial deadline, of course, and was extended for two months to April 28, 2023 at the parties' request. [Dkt. #55]. That deadline was extended another two months to June 28, 2023 [Dkt. #62] and then stayed on June 16, 2023, while the parties tried to settle the case. [Dkt.#65]. When their efforts were unsuccessful, they received a further extension until October 16, 2023. [Dkt. #67]. As that deadline neared, things went off the rails with the parties filing dueling motions to compel [Dkt. ##72, 76], a motion for a protective order from the defendant [Dkt. #71], and a motion from

the plaintiff to quash a subpoena to a former employer [Dkt. #78].

On November 15, 2023, Judge Blakey denied the defendant's motion for a protective order [Dkt. #90], and granted defendant's motion to compel in part, ordering plaintiff to respond to interrogatories 3 and 5 and requests for production 43 and 44. He also granted in part the plaintiff's motion to compel, ordering the defendant to respond fully to interrogatories 3, 4, 14,15, 17, 18, and to document requests 13, 21, 29, 30, 53, 55, 82, and 84. And, the Judge denied the plaintiff's motion to quash. [Dkt. #92]. He also ordered the parties to meet and confer concerning which employees constitute comparators for this case, and concerning ESI and their respective privilege logs. [Dkt. #92].

Three months later, the plaintiff filed another motion to compel, complaining that defendant had not complied with Judge Blakey's Order to supplement its responses to interrogatories and document requests and refused to produce a privilege log. [Dkt. #96] Judge Blakey denied the motion without prejudice to refiling and referred discovery supervision here. [Dkt. #100]. Plaintiff then refiled the motion before me on March 15, 2024. [Dkt. #113].

As is often the case with discovery disputes, judging by their submissions on this dispute, the attorneys appear to be involved in two completely different cases. On the one side, there are the plaintiff's three lawyers who give every appearance of being deprived of discovery, complaining that the defendant has not complied with Judge Blakey's Order to supplement their discovery responses. On the other side, the defendant's lawyers insist that they have complied with Judge Blakey's ruling. They tell the court that the defendant has produced 1100 pages of responsive documents, on top of 2200 it produced before that. They point out that the plaintiff had served 23 interrogatories and 98 requests for production of documents, and what's more, a massive ESI request, which covered 16

2

custodians and nine different groups of searches with listed custodians, which combined contain over 125 different search strings some going back as far as 2016. The defendant insists that is a lot in a case about one salesman alleging discrimination over a period of about three years, but apparently the plaintiff does not think it is nearly enough.

Plaintiff first asks for an to Order requiring the defendant to comply with Judge Blakey's Order of November 15, 2023, including by supplementing its discovery responses and producing all responsive materials, by a date certain. Magistrate judges in this district are no strangers to motions asking for them to order an opponent to do something they've already been ordered to do. The defendant says it has complied, producing an additional 1100 pages of documents. Plaintiff retorts that this additional production failed to comply with Judge Blakey's requirement that the defendant "must produce information relating to disability and FMLA complaints . . . ." [Dkt. #92]. If that is the case, the defendant is ordered to comply with that specific requirement within 21 days of the entry date of this Order.[1]

Then there's the privilege log squabble. Judge Blakey ordered the parties to meet and confer over it, and although plaintiff claims they have, it looks more like they have not, at least not in "good faith" as Local Rule 37.2 demands. The "good faith" requirement of the Rule is significant and demands more than empty adherence to a meaningless form.

The defendant explains that it is not withholding any documents productions based on attorney-client privilege or work product, aside from communications that defendant's counsel had

---

[1] The court would prefer this case not go to the dark place where attorneys on one side demand that the attorneys on the other side provide declarations in which they swear they are telling the truth about complying with their discovery obligations. *Cf. M1 Holdings, Inc. v. Members 1st Fed. Credit Union*, No. 22 C 1162, 2024 WL 182220, at *3–4 (N.D. Ill. Jan. 17, 2024).

with defendant after plaintiff's attorney first asserted his claims in a letter to the defendant on July 21, 2020. [Dkt. #108-2].[2] Counsel was not involved in the parties' dispute prior to that. But defendant has presented a moving target for its desired privilege log cut-off date. In its objections to the plaintiff's discovery requests, the defendant said it objected "to producing a privilege log for confidential communications between Defendant's counsel and Defendant that occurred after this lawsuit was filed or after Plaintiff filed his Charge of Discrimination." [Dkt. #117, Page 4/6]. The lawsuit was filed May 14, 2021. The EEOC charge was filed October 20, 2020. [Dkt. #11]. Plaintiff wasn't terminated until March 31, 2021, and the plaintiff's current complaint alleges a number of instances of discrimination between July 21, 2020, and then. [Dkt. #43, Pars. 63-80]. If defendant wants to be relieved of compliance with Fed.R.Civ.P. 26(b)(5)(A)(ii)(party must '') describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."). "Withholding documents without a proper notice of privilege is, to be sure, a violation of the Federal Rules . . . ." *Hobley v. Burge*, 433 F.3d 946, 951 (7th Cir. 2006), and applicable caselaw, *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992), which demands that the privilege must be made and sustained on a document-by-document basis. A blanket claim of privilege that does not specify what information is protected will not suffice. "The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). Thus, the defendant needs to pick a lane.

---

[2] Confusingly, the defendant also claims that contact was first made a day earlier, on July 20, 2020. [Dkt. #117, Page 3/6].

Defendant is also a bit vague – and improperly so – about why it shouldn't have to produce a privilege log for – we'll say – post-complaint exchanges with counsel. Defendant asserts that the privilege log "would not be probative of any issue nor is it proportional to the discovery needs in this case." [Dkt. #117, Page 4/6]. But a privilege log isn't supposed to be "probative of any issue", it's supposed to be designed to support claims of privilege; to "enable other parties" – and the court – "to assess the claim." Fed.R.Civ.P. 26(b)(5)(A)(ii). It's also unclear how the compilation of a privilege log is not proportional to the discovery needs of this case because defendant doesn't offer anything further. It's just an unadorned, boilerplate objection. Rule 26(b)(1)'s amendment regarding proportionality "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." Fed.R.Civ.P. 26(b)(1)(2015 Amendment comments); *see also Heraeus Kulzer, GmbH, v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011) ("A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery."); *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21 C 305, 2023 WL 4181198, at *4 (N.D. Ill. June 26, 2023)("Without greater detail and analysis, [party]'s showing is insufficient to establish an undue burden and disproportionality based on that burden."). Defendant then adds that there would be a chilling effect on attorney-client communications if they were subject to be challenged as not privileged. [Dkt. #117, Page 4/6].

Unfortunately, this happens quite often, and it is not infrequently discovered that a party's claims of privilege are invalid. *See, e.g., Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, No. 18 C 6109, 2019 WL 5963644, at *4 (N.D. Ill. Nov. 13, 2019)(in camera inspection of documents revealed any number of frivolous privilege log claims, including a claim that a photograph of a toilet was protected by the attorney-client privileged); *Towne Place Condo.*

*Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 901 (N.D. Ill. 2018)("Improper and needless assertions of privilege needlessly sap the necessarily limited time of judges, forcing parties with substantial disputes to wait in a longer queue and condemning them to receive less judicial attention when their cases finally are heard. This is a significant problem on which the Seventh Circuit in other contexts has spoken."). That's one reason why, again, parties have to support their claims of privilege on a document-by-document basis. *Hobley*, 433 F.3d at 951; *White*, 970 F.2d at 334; *Lawless*, 709 F.2d at 487. Ignoring this basic requirement does not eliminate it, any more than ignoring an elephant in the room eliminates the elephant. *Newsday, LLC v. County of Nassau*, 730 F.3d 156, 169 (2nd Cir. 2013).

The defendant adverts to cases where a party was allowed to avoid privilege log requirement for communications between client and counsel occurring once litigation began. *See, e.g., Kellgren v. Petco Animal Supplies, Inc.*, 2016 U.S. Dist. LEXIS 206202, at *20 (S.D. Cal. 2016) (this court will not compel the production of a privilege log for confidential communications between counsel and client that occurred after this lawsuit was filed); *United States v. Bouchard Transp.*, 2010 WL 1529248, at 2 (E.D.N.Y. 2010)("privilege logs are commonly limited to documents created before the date litigation was initiated"); *Ryan Inv.Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, at 3 (N.D. Cal. 2009)("counsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log."); *McAllister v. Adecco Group N.A.*, 2018 WL 8367612, at *2 (D. Haw. 2018)("it is not required to provide a privilege log as to any document prepared by counsel, or at the direction of counsel,... after litigation commenced with the EEOC Charge."). The plaintiff incorrectly

6


dismisses these cases as non-binding, non-Seventh Circuit cases.[3] This is too insular a view of how law works. There is a world beyond the Seventh Circuit that ought not be ignored – at least in those instances where the Seventh Circuit has not decisively ruled and set forth the governing principle – binding, of course, only within the Circuit.

But, the trend – if it can be called that – goes well beyond a handful of cases. At least two district courts have adopted Local Rules exempting post-Complaint communications from any privilege log requirement. S.D.Fla.L.R. 26.1(g)(3)(C); N.D. Okla. L.R. 26.4. *See also Stern v. O'Quinn*, 253 F.R.D. 663, 689 (S.D. Fla. 2008)("In the Southern District of Florida, a policy decision has been made that, despite the relevancy of a given document, in most cases, there is no good reason to require a party to go through the expense and burden of creating a privilege log with respect to documents created after the commencement of a case."). And while the default setting is strict adherence to Fed.R.Civ.P. 26(b)(5)(A)(ii), it cannot be denied that a fair number of courts dispense with strict adherence for post-Complaint communications on the proverbial "case-by-case basis." *See, e.g., In re Gardasil Prod. Liab. Litig.*, No. 3:22-MD-03036-RJC, 2023 WL 9510889, at *1 (W.D.N.C. June 27, 2023)(post-complaint materials need not be listed on a privilege log); *Kumar v. Nationwide Mut. Ins. Co.*, No. 22CV03852TLTLJC, 2023 WL 3598478, at *9 (N.D. Cal. May 23, 2023)"[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log."); *OnActuate Consulting Inc. v. Aeon Nexus Corp.*, No. 120CV508LEKCFH, 2022 WL 866418, at *11

---

[3] Given the cases that plaintiff cites, it is perhaps worth pointing out that a "decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *see also Blow v. Bijora, Inc.*, 855 F.3d 793, 805 (7th Cir. 2017); *Word Seed Church v. Vill. of Homewood*, 43 F.4th 688, 691 (7th Cir. 2022).

(N.D.N.Y. Mar. 23, 2022)(" This Court has explained that "parties should not be required to list on a privilege log, on an ongoing basis, communications between attorney and client once litigation has commenced."); *Lane Constr. Corp. v. Skanska USA Civ. Se.*, Inc., No. 6:21-CV-164-RBD-DCI, 2022 WL 3136868, at *2 (M.D. Fla. Jan. 20, 2022)("However, the undersigned finds that neither [plaintiff] nor any other party must, in response to another party's discovery request, disclose on a privilege log any document created after the commencement of this litigation on which a party's in-house lawyer is copied and concerning which the attorney-client or work product privilege would apply."); *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 820CV00847DOCJDEX, 2021 WL 6882375, at *3 (C.D. Cal. Dec. 6, 2021)("Courts in this circuit routinely deny a motion to compel a privilege log of attorney-client communications or work product dated after commencement of litigation."); *Brown v. West Corp.*, 287 F.R.D. 494, 499 (D. Neb. 2012)("This Court has joined other district courts in assuming privilege for attorney-client communications that transpire after the initiation of litigation in situations where the plaintiff is requesting extensive discovery."); *Carotek, Inc. v. Kobayashi Ventures, LLC*, No. 07 Civ. 11163(NRB), 2010 WL 2102627, at *1 (S.D.N.Y. May 14, 2010) (finding "no need" for materials generated after the start of the litigation to have been included in a privilege log); *Binion v. Glover*, No. 07-13443, 2009 WL 4730463, at *4 (E.D. Mich. Dec. 10, 2009)("With respect to documents relating to the October 13, 2006 incident that were created after plaintiff's lawsuit was filed, the Court concludes that such documents need not be produced or placed on a privilege log because they would clearly be protected by at least the work product privilege."). see also James W. Quinn, Mindy J. Spector & John P. Mastando III, *Responding to Document Requests*, 2 Bus. & Com. Litig. Fed. Cts. § 21:41 (Robert L. Haig, ed., 2d ed. (2006)("[I]n most litigations, counsel will agree to omit from the privilege log

documents created by outside or in-house counsel after the litigation has commenced."). The defendant's position is not nearly as far-fetched as plaintiff would have us believe.

There is a sliding scale at work here. Once litigation commences, it becomes more and more likely that documents and communications between a party and its counsel qualify as privileged, and documents created by counsel qualify as "work product." Such materials would probably be "relevant," insofar as they contained some discussion of the subject matter of the dispute; but also they would likely have no direct relation to the actual events that gave rise to the underlying dispute. In other words, in this case, the plaintiff was fired in May of 2021. Defendant and counsel may have been emailing about it well after the plaintiff filed suit, but the decision, right or wrong, was made back before May 2021. While the more recent, post-Complaint material would have a retrospective relation to the termination and alleged discrimination leading up to it. They would be a poor substitute for documents generated leading up to and during the incident, including the client's testimony. Additionally, the volume of communications with counsel and documents exchanged with counsel once the parties are joined in legal battle can make logging and description in compliance with Fed.R.Civ.P. 26(b) impermissibly burdensome. And how does one describe those post-Complaint exchanges sufficiently to support a claim of privilege without revealing too much.[4] One can imagine a rather unhelpful privilege log with scores of entries reading "legal advice re: plaintiff's termination." Such a log would be all but useless.

And, coincidentally, that's the type of log the plaintiff has produced, only a little worse. The

---

[4] The Advisory Committee's Notes do suggest that a responding party may provide "[d]etails concerning time, persons, general subject matter, etc.," for the withheld materials, but that it may not be appropriate to provide such information "when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories."

9

plaintiff's log of communications between himself and counsel since February of 2021 has no descriptions of those communications. It doesn't provide any clue as to the subject matter of the exchanges. [Dkt. #117-2]. As the plaintiff, himself, argues, not every communication involving an attorney meets the criteria for privilege. [Dkt. #108, at 5]. A list of communications and dates with nothing more doesn't comply with Fed.R.Civ.P. 26(b)(5)(A)(ii), which requires the party to "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." If the plaintiff really wants a privilege log from the defendant for all communications after the plaintiff's attorney contacted defendant's counsel, plaintiff has a lot more work to do on his own privilege log.

While I am prepared to make a ruling as to the privilege log issue, I have the impression that the parties never quite complied with Judge Blakey's Order that they meet and confer over the issue; at least not in "good faith" as was implicit in the Order and explicit under the Local Rule. *See, e.g., 25 W. Ave. LLC v. Lester*, No. 22 C 2697, 2024 WL 1075213, at *1 (N.D. Ill. Mar. 12, 2024)("Good faith isn't evinced by both sides simply digging in and refusing to budge."); *Gunn v. Stevens Security & Training Servs., Inc.*, 2018 WL 1737518, at *3 (N.D. Ill. 2018)("A party that steadfastly maintains a position without support is not engaging in a good faith discussion."); *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("... adamantly clinging to the positions with which they began" amounts to a failure "to comply, in good faith, with the requirements of Local Rule 37.2.").

Thus, the parties should have an opportunity to reach an accord regarding their privilege logs. It may behoove them to do so because courts have great discretion to resolve discovery disputes. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013). That discretion means that in most instances, two decision-makers – on virtually identical facts – may arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996); *see also Mejia v. Cook Cty., Ill.*, 650 F.3d 631, 635 (7th Cir. 2011)("it is possible for two judges, confronted with the identical record, to come to opposite conclusions and for the appellate court to affirm both."); *United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)("The striking of a balance of uncertainties can rarely be deemed unreasonable....").

In short, it would be in the parties' interest to reach a negotiated result. It should not be forgotten that a party could be "right," but find itself on the losing side of a court's ruling. The parties will report the results of their efforts at a status hearing in two weeks on April 17, 2024 at 9:00 a.m.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/3/24